FILED

2007 May-21  AM 07:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION (HUNTSVILLE DIVISION)

| | | |
|---|---|---|
| **SUN WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Civ. Action No.: 5:06-CV-2006-VEH** |
| | ) | |
| | ) | |
| **KCA CORPORATION, K AND K** | ) | |
| **FOOD SERVICES, AND HARVEY** | ) | |
| **BENJAMIN FORDHAM, III,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Pending before the court is Defendant KCA Corporation's (hereinafter "KCA") Motion to Dismiss Plaintiff Sun Williams's (hereinafter "Plaintiff") claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted or, in the alternative, Rule 56 for summary judgment. (doc. 9).

For the reasons set forth herein, KCA's Rule 12(b)(1) Motion to Dismiss is due to be **GRANTED**.[1]

---

[1] Because the court's disposition of Plaintiff's claims against KCA is sufficient under Fed. R. Civ. P. 12(b)(1), the court does not address KCA's Motion to Dismiss under Rule 12(b)(6).

## II.    FACTUAL HISTORY

KCA is incorporated in the State of Kentucky to conduct business as a Food Service Contractor.  (doc. 11, exh. E).  KCA is also registered in Alabama to operate in the government food service industry.  (Id.).

Plaintiff entered employment with KCA at its Redstone Arsenal facility in Madison County, Alabama, on or around April 26, 1994.  (doc. 2 ¶ 3; Williams Aff. ¶ 2).  KCA was then operated by Mr. Fred Anderson (hereinafter "Mr. Anderson") and Mrs. Kyong Cha "Wendy" Anderson (hereinafter "Mrs. Anderson"), husband and wife.  (Williams Aff. ¶¶ 2-3).  Mrs. Anderson was the owner and president of KCA, while Mr. Anderson conducted KCA's business affairs.  (Id. ¶ 3; doc. 11, exh. F).

KCA's administrative offices were located in Hopkinsville, Kentucky. (Williams Aff. ¶ 4; doc. 11, exh. E).  Mr. Anderson was actively involved in managing the Redstone Arsenal facility, while Mrs. Anderson visited the facility only occasionally.  (Williams Aff. ¶ 4; Howard Aff. ¶ 4).

At some point during Plaintiff's employment with KCA, KCA entered a joint venture with Harvey Benjamin Fordham (hereinafter "Mr. Fordham"), by which Mr. Fordham and KCA shared ownership of the Redstone Arsenal facility under the name

"K & K Food Services."[2]   (Williams Aff. ¶ 5; Neville Decl. ¶ 3).   Since 1997,

employees at the Redstone Arsenal facility have been employed by K & K.  (Neville

Decl. ¶ 3).

According to Plaintiff, she observed very little change in the conditions of her

employment when the Redstone Arsenal facility came under the joint venture.

Plaintiff's paychecks from K & K continued to bear Mrs. Anderson's signature.  (Id.;

doc. 14, exh 5).  Plaintiff's job duties remained the same, and she continued to contact

Mr. Anderson regarding workplace conflicts that could not be resolved by local

management.[3]  (Id.).

Plaintiff's daughter, Sunna Reed (hereinafter "Reed") entered employment with

_____

[2]  Upon entering the joint venture, KCA's ownership interest in K & K was reduced from sole ownership to a minority ownership of 49%, with Mr. Fordham claiming the majority interest of 51%.  (Neville Decl ¶ 3).  It is not clear whether K & K was comprised of several facilities or was limited to the Redstone Arsenal facility at which Plaintiff worked.

[3]  Plaintiff's chain of command during her employment with K & K is as follows:  Dennis Hardin, Assistant Manager of the Redstone Arsenal facility (doc. 1, ¶ 9, 10, Williams Aff ¶ 7); Dan Tyree, Project Manager of the Redstone Arsenal facility (doc. 1, ¶ 16, Williams Aff. ¶ 7); Mr. Fordham (Williams Aff. ¶ 7); and Mr. Anderson, president and vice president of K & K. (Williams Aff. ¶ 7).  Mr. Anderson does not appear to have any official affiliation with KCA, aside from his marriage to Mrs. Anderson, who remains KCA's owner and president.  (doc. 11, exh C)

Plaintiff asserts that she also continued to communicate her employment concerns to Mrs. Anderson, even after the Redstone Arsenal facility came under joint ownership.  However, Plaintiff offers no evidence to support this claim, and KCA disputes that Mrs. Anderson held any authority over Plaintiff's employment once the joint venture was created.  Mrs. Anderson did not visit the Redstone Arsenal facility after 1997, while Mr. Anderson visited the facility only one to two times annually.  (Id.).

K & K in June 2004.  (doc. 2, exh. 1).  Shortly thereafter, Plaintiff began observing Dennis Hardin (hereinafter "Hardin") sexually harassing Reed during her work shifts.  (Id.; doc. 2, ¶ 12).  Plaintiff alleges that she observed Hardin touching Reed inappropriately, and that Hardin called Plaintiff's house and left inappropriate messages for Reed.  (Id.).  At Christmas 2004, Hardin allegedly told Plaintiff that he would be her new son-in-law.  (doc. 2, exh. 1; doc. 2, ¶ 12).  Plaintiff claims that she and Reed were both deeply upset by the harassment.  (Id.).

Plaintiff alleges that she feared retaliation, including termination, from Hardin if Reed rejected Hardin's advances.  (doc. 2, ¶ 13; doc. 2, exh. 1).  After Reed expressed to Hardin that his conduct was unwelcome, Plaintiff observed a change in Hardin's behavior toward Reed.  (Id.).  Hardin changed Reed's work schedule, reduced her number of working hours, and allegedly sought ways to discipline her and/or terminate her employment with K & K.  (Id.).

Meanwhile, beginning in March 2005, Plaintiff suffered harassment from her coworker, Felicia Sheppard (hereinafter "Sheppard").  (doc. 2 ¶ 14).  On March 13, Plaintiff filed a complaint with K & K management following a dispute with Sheppard.[4]  (Id.).  Sheppard had allegedly threatened Plaintiff with bodily harm

---

[4]  The record identifies Forest Kinney, Shift Supervisor, as the manager with whom Plaintiff filed this complaint.  (doc. 14, exh 8, pg. 5, ¶ 1.1).

4

because Sheppard believed Plaintiff was following her during their shift.  (doc. 14, exh 8, pg. 5, ¶ 1.1).  Sheppard was also angry with Plaintiff for failing to give Sheppard the telephone number of a male customer at the Redstone Arsenal facility.  (Id., ¶ 2.1).  When the shift ended, Sheppard allegedly waited for Plaintiff in the parking lot, where she continued to threaten Plaintiff with physical injury. (Id.,¶1.1).

In addition to her complaint to K & K management, Plaintiff reported the incident to the Redstone Arsenal military police, who began to investigate her report that same evening.  (doc. 2, exh. A).  However, Sheppard continued to threaten Plaintiff during her work shift the following day. (Id.,¶2.1).  Sheppard and Plaintiff both explained the incidents to K & K management.  (Id.).  Plaintiff also submitted a letter to K & K management complaining of Sheppard's continuing harassment.[5] (Id.).

When K & K management learned of the military police investigation into Plaintiff's report against Sheppard, Dan Tyree and Hardin allegedly forbade K & K employees from speaking with anyone from the government about Plaintiff's report.  (doc. 2, ¶ 18; doc. 2, exh. 1).  This instruction was communicated at a company

---

[5]  The record does not identify the K & K manager with whom Plaintiff and Sheppard spoke on this occasion.  However, Plaintiff asserts that K & K management operates under the policy, "if management didn't see it, it didn't happen," and thus does not typically respond to employees' complaints of harassment.  (doc. 2, ¶ 17; doc. 14, exh. 8, pg. 5, ¶ 2.1).  Plaintiff does not believe that K & K ever investigated her complaints against Sheppard.  (doc. 2, exh. 1).

meeting, at which K & K employees were informed that anyone who spoke with an investigator would be terminated.  (Id.).

Plaintiff and Reed both ignored this admonition and cooperated with government investigator Fred B. Keith (hereinafter "Keith") regarding Plaintiff's report against Sheppard.  (doc. 2, ¶ 19; doc. 2, exh. 1).

On or about April 10, 2005, Reed telephoned Plaintiff during Plaintiff's work shift, explaining that she would be late to work that day due to traffic delays at the arsenal security gate.  (doc. 2, ¶ 20; doc. 2, exh. 2).  Plaintiff communicated this information to her immediate supervisor, who allegedly responded that "that was fine."[6]  (Id.).  Plaintiff then continued to work her shift.  (Id.).

On or about April 13, 2005, Plaintiff was terminated for allegedly falsifying Reed's time record on April 10.[7]  (doc. 2, ¶ 21; doc. 2, exh 1).  Plaintiff complained to K & K management that she believed her termination was in retaliation for speaking with Keith during his investigation.  (doc. 2, ¶ 22; Id.).  She tried to call Mrs. Anderson about her grievance, but Mr. Anderson refused to let her speak with

_____

[6]  The record does not identify the supervisor who made this comment, nor does it explain what the supervisor meant to communicate by the comment.

[7]  The record is unclear who terminated Plaintiff's employment.  In her brief, Plaintiff alleges that Mr. Fordham terminated her, whereas in her Amended Complaint, she alleges that Hardin fired her.  (doc. 2, ¶ 37).  Plaintiff does not specifically dispute KCA's claim that Mr. Fordham terminated her.

his wife, choosing the handle the matter himself.  (Williams Aff. ¶ 9).  According to Plaintiff, Mr. Anderson agreed with Plaintiff that Mr. Fordham had terminated her wrongfully.  (Id.).  He also assured Plaintiff that he would reprimand Mr. Fordham, fire Hardin, and reinstate Plaintiff to her former job.  (Id.).

Plaintiff alleges that K & K never investigated her complaints into her termination, and to date Plaintiff's employment with K & K has not been reinstated. (Id.).  Furthermore, despite her complaints to K & K regarding Hardin's harassment of Reed, Plaintiff believes that Hardin was never disciplined.  (doc. 2, ¶ 24).

## II.   PROCEDURAL HISTORY

Plaintiff filed an EEOC charge of discrimination against K & K on August 24, 2005.[8]  (doc. 2, ¶ 4; doc. 2, exhs 1, 2).  She alleged that Hardin's advances toward Reed created a hostile work environment for Plaintiff.  (doc. 2, ¶ 31).  She alleged further that her termination had been in retaliation based on her cooperation with Keith's investigation.  (doc. 2, exh. 1).

Plaintiff received a Dismissal and Notice of Rights from the EEOC on July 11, 2006.  (doc. 2, exh. 2).  She commenced this action on October 4, 2006.  (doc. 1).

In her Complaint, Plaintiff requested (1) a trial by jury; (2) a declaratory judgment that K & K's conduct toward her violated and continues to violate her rights

---

[8]  Plaintiff failed to name KCA or Mr. Fordham in her EEOC charge.  (doc. 2, exh. 1).

7

under Title VII; (3) a permanent injunction against K & K to prevent it from continuing to violate Title VII; (4) an injunction ordering K & K to establish a written policy and procedural code against sexual harassment among its employees; (5) a permanent injunction to prevent K & K from continuing to violate Alabama law; (6) an injunction ordering K & K to establish a written policy and procedural code against various state law violations, including slander, assault and battery, invasion of privacy, and negligent and/or wanton hiring, promoting, retention, and other supervisory procedures; and (7) an award of back pay, including interest, in addition to compensatory, punitive, and/or nominal damages.  (doc. 1, part VII, ¶¶ 1-6).  Plaintiff also seeks other relief including, but not limited to, attorney fees and costs.  (Id., ¶ 7).

K & K Food Services was the only defendant named in Plaintiff's Complaint. (doc. 1).  On January 17, 2007, Plaintiff filed an Amended Complaint, in which she named KCA and Mr. Fordham as additional defendants.  (doc. 2).

On February 12, 2007, KCA filed its Motion to Dismiss Plaintiff's Amended Complaint or, in the alternative, for Summary Judgment.  (doc. 9).  KCA asserts that Plaintiff's claims against it are due to be dismissed under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted, because Plaintiff was not employed by KCA at any time relevant to her cause of action.  (Id., ¶ 4).  KCA also

moves the court to dismiss Plaintiff's claims against it pursuant to FED. R. CIV. P. 12(b)(1), because her claims against it are not within the court's subject matter jurisdiction. (doc. 9, ¶ 5). In the alternative, KCA moves the court for summary judgment, because no genuine issue of material fact exists as to whether KCA was Plaintiff's employer under Title VII. (Id., ¶ 6).

Plaintiff filed her Response to KCA's Motion to Dismiss on February 23, 2007. (doc. 11). The court entered an Order on April 18, 2007, seeking evidence and supporting briefs from Plaintiff and KCA on the issue of subject matter jurisdiction. (doc. 13). Both parties have briefed this issue with accompanying evidence. (docs. 14-16).

## III.   STANDARD OF REVIEW

It is extremely difficult to dismiss a claim for lack of subject matter jurisdiction. *Simanonok v. Simanonok* 787 F.2d 1517, 1519 (11th Cir. 1986). Attacks on subject matter jurisdiction under FED. R. CIV. P. 12(b)(1) come in two forms: (1) "facial attacks" and (2) "factual attacks." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).

Facial attacks on the complaint demand "the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations of his complaint are taken as true for the purposes of this motion." *Id.*

Factual attacks "challenge the existence of subject matter jurisdiction on fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997).  "On a factual attack on subject matter jurisdiction, a court's power to make findings of facts and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of a plaintiff's cause of action." *Id.*  If the facts do not go to the merits of the plaintiff's cause of action:

> [T]he trial court may proceed as it never could under 12(b)(6) or FED. R. CIV. P. 56.  Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Lawrence,* 919 F.2d at 1529 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)).

If an attack on subject matter jurisdiction also implicates an element of the cause of action:

> [T]he proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case ... Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim

is found to exist, the case is dismissed on the merits.  This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provide, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) ... or Rule 56 ... both of which place great restrictions on the district court's discretion ... [A]s a general rule a claim cannot be dismissed for lack of subject matter jurisdiction because of the absence of a federal cause of action.  The exceptions to this rule are narrowly drawn, and are intended to allow jurisdictional dismissals only in those cases where this federal claim is clearly immaterial or insubstantial.

*Williams v. Tucker*, 645 F.2d 404, 415-16 (5th Cir. 1981).

As noted in the court's Order of April 18, 2007, KCA's Motion to Dismiss constitutes a factual attack on subject matter jurisdiction.  (doc. 13). The court will therefore "weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Lawrence,* 919 F.2d at 1529.

## IV.   ANALYSIS

KCA argues that the court lacks subject matter jurisdiction over Plaintiff's claims against it because Plaintiff failed to include it in her EEOC charge against K & K.

### A.   Plaintiff's arguments regarding her Title VII "employer"

In her response, Plaintiff argues that the court may exercise subject matter jurisdiction over her claims against KCA.  She supports this argument with the assertion that KCA was her employer during all times relevant to her

11

EEOC charge.  The court is uncertain as to the relevance of this argument to its subject matter jurisdiction over KCA.[9]   However, because Plaintiff discusses the issue at length, the court will address this argument first, then proceed to her claims that apply to the court's subject matter jurisdiction over KCA.

### 1.   "Controlling Authority"

Plaintiff first argues that KCA was her employer because it exercised controlling authority over her employment with K & K.  She points to *Lee v. Mobile County Com'n*, in which the court found the following factors relevant to determining whether a defendant is a Title VII "employer": "the right to hire, fire, transfer, promote, discipline, set the terms, conditions and privileges of employment, train and pay the plaintiff."   954 F.Supp. 1540, 1545-46 (S.D.Ala.,1995), *aff'd, Lee v. Mobile County Com'n*, 103 F.3d 148 (11th Cir 1996), citing *Ryals v. Mobile County Sheriff's Department*, 839 F.Supp. 25, 26 (S.D.Ala.1993).  "Of these factors, the extent of the defendant's right to control the means and manner of the workers' performance is the most important."   *Lee*, 954 F.Supp. at 1546, citing *Magnuson v. Peak Technical Services, Inc.*,

_____

[9]  With this argument, Plaintiff appears to be responding to KCA's Rule 12(b)(6) Motion for Dismissal.  Her response is contained in her brief on subject matter jurisdiction.

808 F.Supp. 500, 509 (E.D.Va.1992).

Plaintiff asserts that KCA had the right to control the means and manner of her employment at K & K. She cites to the fact that Mrs. Anderson signed both her paychecks and K & K's union agreement, and that Mr. Thomas Neville (hereinafter "Mr. Neville"), general manager of KCA, investigated employees' complaints at K & K.[10]

The court finds that the purported evidence is inapposite to whether KCA was Plaintiff's employer. Plaintiff has not shown that either Mrs. Anderson or Mr. Neville had the right to control the means and manner of her employment at K & K. First, payment alone does not create or imply an employer-employee relationship. See *Lee v. Mobile County Com'n*, 954 F.Supp. 1540, 1546 (S.D.Ala.1995); *Ryals*, 839 F.Supp. at 26; *Hall v. Delaware Council on Crime & Justice*, 780 F.Supp. 241, 245 (D.Del.1992); *Warren v. Stone*, 751 F.Supp. 1302, 1304 (M.D.Ill.1990). Second, Mrs. Anderson's signature on K & K's union agreement does not per se indicate that KCA had "the right to hire, fire, transfer, promote, [or] discipline" Plaintiff. *Lee*, 954 F.Supp. at 1545-46. Mrs. Anderson was not part of Plaintiff's chain

---

[10] Mrs. Anderson's signature on the Collective Bargaining Agreement identifies her as President of KCA.  (doc. 14, exh. B).

13

of command, and did not play a role in the decision to terminate Plaintiff. (Neville Decl. ¶ 3; Williams Aff. ¶¶ 9, 10).

As to Mr. Neville, the record does not show that he held any managerial authority over K & K's employees on behalf of KCA.  He also was not part of Plaintiff's chain of command, and did not play a role in the decision to terminate Plaintiff.  (Neville Declaration ¶ 3; Williams Aff. ¶¶ 9, 10).  He visited the Redstone Arsenal facility only one or two times annually.  (doc. 14, exh. 1, ¶ 8).  Mr. Neville went to the facility to investigate Reed's complaint of sexual harassment against Hardin; however, Reed concedes that she did not speak with Mr. Neville during his visit.  (Reed. Aff. ¶ 9).  Plaintiff makes no argument regarding the results of Mr. Neville's investigation into Reed's complaint, including whether his inquiry had any effect on Plaintiff's termination.

Plaintiff also argues that Mr. Anderson's involvement in K & K's employment affairs demonstrates control by KCA.  However, Mr. Anderson's management of K & K is explainable by the fact that he is president and vice president of K & K.  (doc. 11, exh. C).[11]  His involvement with K & K thus

---

[11]  While the evidence of record does not clearly identify Mr. Anderson as vice president of K & K, Plaintiff avers in her brief that Mr. Anderson does occupy this role.  (doc. 11, pg. 4).

14

fails to demonstrate controlling authority by KCA.

Plaintiff has not shown that KCA had the right to control the means and manner of employment at K & K.   The court therefore disagrees with Plaintiff's claim that KCA was her employer during the times relevant to this action.

### 2.    "Joint" and "Single" employer liability

#### a.    Single Employer

Plaintiff argues that, if the court finds that K & K was her employer and not KCA, the court should nevertheless disregard the distinction between the two entities and hold both KCA and K & K liable as a "single employer."

Under the "single employer" theory, two entities that are sufficiently interconnected with one another may be considered one and the same employer in some cases.  "In civil rights actions, 'superficially distinct entities may be exposed to liability upon a finding they represent a single, integrated enterprise: a single employer.'" *Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 763-64 (5th Cir.1997), quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir.1983).

The single employer theory "concentrate[s] on the degree of control an entity has over the adverse employment decision on which the Title VII suit is

based." *Llampallas*, 163 F.3d at 1244-45, citing *Fike v. Gold Kist, Inc.*, 514 F.Supp. 722, 725-26  (N.D.Ala.1981), *aff'd*, 664 F.2d 295 (11th Cir.1981); *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 n. 4 (6th Cir.1997); *Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 763-64 (5th Cir.1997); *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir.1995).

As previously stated, Plaintiff has failed to produce sufficient evidence to demonstrate that KCA had authority to terminate her in the instant case.  The record is clear that Mr. Fordham made the decision to terminate Plaintiff, not KCA.  (Neville Declaration ¶ 5; Williams Aff. ¶ 9).  Plaintiff has not shown that KCA either requested or approved her termination.  Consequently, the court may not properly apply the single employer theory to hold KCA liable for her Title VII claims.

### b.    Joint Employer

Plaintiff also implies that KCA may be liable for her claims under the "joint employer" theory.  Under the joint employer theory, an entity that does not employ an individual may exercise sufficient control over that individual such that it may be liable as the individual's "joint employer."  See *Llampallas*, 163 F.3d 1245, citing *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d

990, 993 (6th Cir. 1997).  In cases where only one entity exercises controlling authority over an employee, a joint employer theory is not applicable. *Llampallas*, 163 F.3d at 1244-45.

The court cannot agree with Plaintiff that KCA is liable for her claims under a joint employer theory.  For the same reasons set forth in regard to the single employer theory, Plaintiff has not demonstrated that KCA exercised controlling authority over her employment.  Consequently, the joint employer theory is inapplicable to Plaintiff's case.

### c.      Agency theory

Plaintiff finally argues that KCA must be liable for her claims under the agency theory.  This approach "examines whether the . . . entity that took the allegedly illegal employment action was acting as the agent of another company, which may then be held liable as the plaintiffs' employer." *Swallows*, 128 F.3d at 993, citing *Deal v. State Farm County Mut. Ins. Co. of Texas*, 5 F.3d 117 (5th Cir.1993); *Fike v. Gold Kist, Inc.,* 514 F.Supp. 722 (N.D.Ala.), *aff'd,* 664 F.2d 295 (11th Cir.1981).

Plaintiff asserts that KCA should be liable for her claims because the acts complained of in this action were committed by K & K as the agent of KCA.  She explains that K & K is a joint venture in which KCA is involved,

which KCA does not dispute.  Joint venturers act as both agent and principal to each other.  *Arndt v. City of Birmingham*, 547 So.2d 397, 399 (Ala. 1989).

Plaintiff,  however, does not argue that Mr. Fordham, as joint venturer with KCA, exercises controlling authority at K & K as the agent of KCA.  On the contrary, Plaintiff appears to minimize Mr. Fordham's involvement in the joint venture, focusing instead on Mr. Anderson's exercise of authority at K & K.  However, Mr. Anderson is not a joint venturer with KCA.  Any argument that Plaintiff asserts regarding his involvement with K & K is therefore inapplicable to her agency claim.

Plaintiff has failed to demonstrate that KCA was her employer, such that, even if this issue was relevant to KCA's Rule 12(b)(1) Motion, it would not help her claim.

The court will now address the arguments that are relevant to its subject matter jurisdiction over KCA.

## C.    EEOC Charge

According to KCA, Plaintiff's failure to name it in her EEOC charge precludes her from filing the instant action against it.  See *Virgo v. Riviera Beach Associates, Ltd.,* 30 F.3d 1350, 1358 (11th Cir. 1994).

Plaintiff counters that KCA should be a party to this action, despite her

18

failure to name it in her EEOC charge.  The Eleventh Circuit Court has instructed that, "[w]here the purposes of [Title VII] are fulfilled, a party unnamed in the EEOC charge may be subjected to the jurisdiction of federal courts."  *Virgo*, 30 F.3d at 1359, citing *Eggleston v. Chicago Journeymen Plumbers' Local*, 130, 657 F.2d 890, 905 (7th Cir.1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982).

To determine whether the purposes of Title VII are fulfilled, courts consider the following factors: (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.[12]  *Virgo*, 30 F.3d at 1359.

### 1.      Similarity of Interest

---

[12]  Neither KCA nor Plaintiff addresses how the court should approach this analysis, i.e., whether all five factors must weigh in a party's favor or whether the court should find that only a majority of factors can aid the court in determining whether Title VII's purposes are fulfilled. Because, as discussed below, the court finds that none of these factors weighs in Plaintiff's favor, this question need not be addressed.

KCA argues that it does not share a sufficient similarity of interest with K & K to fulfill the purposes of Title VII.  KCA did not have controlling authority over K & K during the times relevant to Plaintiff's EEOC charge. (Neville Aff. ¶ 5).  Rather, Mr. Fordham exercised most, if not all, managerial authority over K & K's employees, to the exclusion of KCA.  (Neville Declaration ¶ 3).  KCA's interest in K & K's success is limited to its minority ownership in K & K. (Id., ¶¶ 3-6).

However, Plaintiff argues that KCA is not a separate entity with separate interests from K & K.  She points to the fact that Mrs. Anderson signs K & K's employees' paychecks and to the two entities' sharing of administrative offices.  (doc. 14, exh. 6; doc. 11, exh. E).  Furthermore, K & K is not an incorporated entity; rather, KCA is registered with the Alabama Secretary of State, purportedly on K & K's behalf.  (doc. 11, exh. E).

KCA argues that, despite Mrs. Anderson's signature on Plaintiff's paychecks and the sharing of administrative offices, Mr. Fordham owns the controlling interest in K & K and is a party independent of KCA.  The two entities, therefore, do not share a common ownership or managerial authority.

Plaintiff alleges further that KCA and K & K share at least three officers, Mr. Anderson, Mrs. Anderson, and Mr. Neville.  However, the record is void

of evidence that Mr. Anderson is an officer of KCA, or that Mrs. Anderson and Mr. Neville are officers of K & K.

Similarly, Plaintiff argues that these three individuals oversee both KCA and K & K, thus creating a similarity of interest between the two entities under the agency theory previously discussed.   Again, however, Plaintiff has not shown that Mr. Anderson oversees KCA, or that Mrs. Anderson or Mr. Neville serve K & K in an oversight capacity.   Plaintiff does not dispute that Mr. Fordham exercises controlling authority at K & K, but she makes no makes no argument that Mr. Fordham controls K & K's operations as KCA's agent.

Plaintiff finally argues that KCA and K & K operate under the same control group.  She points to the marriage between Mr. and Mrs. Anderson in support of this claim, but fails to explain how their personal relationship has any relevance to K & K's and KCA's similarity of interests in a business context.

### 2.    Ascertaining KCA's identity for EEOC charge

Plaintiff alleges that she had no reason to believe there was any legal distinction between KCA and K & K when she filed her EEOC charge.  KCA was her employer when she began working at the Redstone Arsenal facility in 1994.  (Williams Aff. ¶ 2; Neville Aff. ¶ 4).  Her paychecks allegedly bore Mrs.

21

Anderson's signature even after the enterprise became a joint venture with Mr. Fordham.  (doc. 14, exh. 5).  She also asserts that KCA's registration with the State of Alabama in place of K & K supports her understanding that the two entities were one and the same.

Assuming the truth of this argument, however, Plaintiff has not even ventured to explain how she ascertained KCA's identity for this action.  If Plaintiff was unable to identify KCA in her EEOC charge, she should have been similarly unable to include it in her Amended Complaint.  The court therefore finds that, because Plaintiff was able to identify KCA for this action, she was equally capable of identifying it in her EEOC charge.  Her failure to do so cannot be overlooked simply because she alleges she "had no reason" to know the difference between the two entities when she filed her charge, but suddenly found reason to include it in this action.

### 3.    Adequate Notice

Plaintiff argues that, because KCA and K & K are closely related entities and share the same administrative office, KCA was adequately notified of her EEOC charge when she filed it against K & K.

The court cannot agree that the EEOC charge against K & K should have placed KCA on notice of any potential claims against it.  If KCA was notified

of Plaintiff's EEOC charge against K & K, it does not necessarily follow that KCA knew Plaintiff also had claims against it. KCA has operated as a separate entity from K & K since 1997. (Neville Declaration ¶ 3). Furthermore, KCA is not the sole owner of K & K; Mr. Fordham, majority owner of K & K, was not named in the EEOC charge either. Therefore, KCA had no reason to assume that Plaintiff's charge against K & K was also intended for KCA.

According to Plaintiff, however, KCA was "on notice" of the potential for this action even before Plaintiff filed her EEOC charge. Plaintiff alleges that Mr. Neville's investigation into her complaint at the Redstone Arsenal facility demonstrates that KCA knew of her grievance prior to the EEOC charge. KCA also learned of her complaints against it when the military police interviewed Mr. Fordham and Mr. Anderson after she reported Sheppard's threats against her. (doc. 14, exh. 8, ¶ 4.1).

Finally, KCA provided evidence related to Reed's EEOC charge against K & K to the EEOC in December 2005.[13] (doc. 14, exh. 7). Plaintiff argues that KCA's participation in that charge should have placed KCA on notice of Plaintiff's subsequent EEOC charge against K & K.[14]

---

[13] The evidence described here consists solely of birthday and Christmas cards given by Plaintiff to Hardin during her employment at K & K. (doc. 14, exh. 7).

[14] The record is not clear whether KCA was a party to Ms. Reed's EEOC charge.

23

Nevertheless, the fact that Mr. Neville and KCA knew of Plaintiff's grievance against K & K does not imply that KCA was on notice of an EEOC charge that had not even been filed yet.  The court finds that KCA was not notified of Plaintiff's claims against it until Plaintiff filed her Amended Complaint in this action.  Plaintiff has failed to demonstrate to the court that such a course of action constitutes adequate notice to KCA that it must defend itself against her EEOC charge.

### 4.  KCA's Opportunity to Participate in Reconciliation

This factor is related to the court's conclusion that KCA was not adequately notified of Plaintiff's EEOC charge.  KCA argues that it was not given the opportunity to defend against Plaintiff's EEOC charge because it had no notice of Plaintiff's claims against it.  KCA concedes that it was apprised of the progress of the charge against K & K, but at no point during that process did it have reason to assume the need to defend its own interests, independently of K & K's.  Further, while KCA participated in K & K's defense by providing evidence to the EEOC, KCA asserts that it had no authority to respond on its own to the charge against K & K, but that Mr. Fordham made the final decision how to answer that charge.

Plaintiff does not respond to these arguments.  She asserts only that

KCA knew about her complaints against K & K both before and after she filed her EEOC charge.   However, the fact that KCA knew about Plaintiff's grievance against K & K does not per se demonstrate that KCA had an opportunity to defend itself.  Plaintiff cites to no authority compelling the court to adopt such a presumption, and the court finds the argument unpersuasive.

### 5.       Prejudice to KCA

Plaintiff argues that, because KCA was informed of the EEOC proceedings against K & K, KCA was not prejudiced by her failure to include KCA in her EEOC charge.   The evidence of record, however, leads to the opposite conclusion.   KCA did not formulate a response to the charge on its own behalf, gather evidence, or decide whether to engage in reconciliation as an individual party to the charge.  (Neville Decl. ¶ 5).  K & K was the only party named in the charge, creating the presumption that only K & K was included in the EEOC process, and only K & K needed to be defended against Plaintiff's claims.  As previously explained, KCA did not even have authority to determine K & K's response to Plaintiff's charge, and thus could not have avoided prejudice by cooperating with the EEOC on K & K's behalf.  (Neville Declaration ¶ 4).

The court has considered the factors set forth by the Eleventh Circuit

Court in *Virgo* to determine whether the purposes of Title VII have been satisfied in the instant case.  Based on the record, the court is not convinced that those purposes are fulfilled, such that Plaintiff's failure to name KCA in her charge may be properly overlooked.

## V.     CONCLUSION

Plaintiff has not shown that, despite her failure to name KCA as a party to her EEOC charge, KCA is properly included as a defendant in this case. Consequently, the court finds that it cannot exercise subject matter jurisdiction over KCA.  KCA's Motion to Dismiss is therefore due to be **GRANTED**.  A separate Order will be entered.

**DONE** and **ORDERED** this the 21st day of May, 2007.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge